1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ALICE SINANYAN, an individual; JAMES )
KOURY, an individual and trustee of the )
Koury Family Trust; and SEHAK TUNA, an )
individual, on behalf of themselves and others )
similarly situated, )
)
                Plaintiffs, )
    vs. )
)
LUXURY SUITES INTERNATIONAL, LLC, )
a Nevada limited liability company; RE/MAX )
PROPERTIES, LLC, a Nevada limited liability )
company; JETLIVING HOTELS, LLC, a )
Nevada limited liability company; and DOES 1 )
through 100, inclusive, )
)
            Defendants. )
_____)

**Case No.: 2:15-cv-00225-GMN-VCF**

**ORDER**

This action involves claims brought by Alice Sinanyan ("Plaintiff"), individually and on behalf of a putative class of approximately 110 condominium owners, against property rental manager JetLiving Hotels, LLC ("JetLiving").[1]  Plaintiff alleges that JetLiving violated its contractual, statutory, and common law duties by failing to disclose its collection of a "resort fee" from rental guests, and the parties have now reached a settlement.  Pending before the Court is the Joint Motion for an Order (ECF No. 69) filed by both parties requesting that the Court grant provisional approval of the proposed settlement agreement and preliminarily certify Plaintiff's proposed class action for purposes of settlement.  For the reasons stated herein, the

---

[1] There are also two other named plaintiffs—James Koury and Sehak Tuna—who are seeking to represent a class against Defendant Luxury Suites International, LLC ("LSI").  Plaintiff is also seeking to represent the class against LSI and Defendant Jab Affiliates, LLC ("Jab").  Reference to these plaintiffs and codefendants is omitted because the instant Motion only concerns allegations with respect to Plaintiff and JetLiving.

Motion is **DENIED**.

## I.   BACKGROUND

On January 6, 2015, Plaintiff filed the instant action alleging various state law violations on behalf of a putative class comprising all condominium owners at the Signature at MGM Grand ("The Signature") who contracted with JetLiving to manage the rental of their condominium units after January 5, 2009 ("Putative Class"). (Compl. ¶ 60, ECF No. 1-1). Specifically, Plaintiff alleges that pursuant to the JetLiving Rental Agreement, members of the Putative Class were entitled to 65% of a "resort fee" collected by JetLiving from rental guests. (*Id.* ¶ 55). According to Plaintiff, not only did JetLiving retain all resort fees, JetLiving also failed to disclose that it was collecting the fee. (*Id.* ¶¶ 52, 54, 55). Based on these allegations, the Complaint alleges the following causes of action against JetLiving: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) intentional misrepresentation; (4) fraudulent concealment; (5) negligent misrepresentation; (6) violation of Nevada Revised Statutes § 41.600; (7) breach of fiduciary duty; and (8) unjust enrichment.

On January 14, 2016, the parties reached a tentative settlement through mediation and subsequently submitted the proposed settlement ("Proposed Settlement") now before the Court. (*See* Joint Mot. for Order 3:10–12, ECF No. 69). The total settlement amount is $250,000 ("Settlement Amount"), which the parties propose allocating in the following manner: (1) "attorney's fees not to exceed the amount of one hundred thousand dollars ($100,000.00)"; (2) "costs not to exceed ten thousand dollars ($10,000.00)"; (3) "an incentive payment in the amount of ten thousand dollars ($10,000.00) for plaintiff Alice Sinanyan"; (4) "administrative expenses in the amount of no greater than nine thousand dollars ($9,000.00)"; and (5) an allocation of the remaining $121,000 "on a *pro rata* basis based on the total resort fees collected by JetLiving from the rental of the individual Putative Class member's unit divided by the total resort fees collected by JetLiving from the rental of all non-opt out Putative Class

members' units." (*Id.* 3:26–4:3, 4:13–15).  The Proposed Settlement provides for notice by direct mail to all Putative Class members identified through JetLiving's business records. (*Id.* 16:3–9).

The instant Motion requests that the Court adopt the parties' proposed order (1) granting preliminary approval of the proposed class action Proposed Settlement; (2) provisionally certifying the Putative Class; (3) approving the proposed method and form of notice; and (4) scheduling a final approval hearing.

## II.   <u>LEGAL STANDARD</u>

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  However, a class action may not be settled without court approval. Fed. R. Civ. P. 23(e).  When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  At the preliminary stage, the court must first assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing where it will make a final determination as to the fairness of the class settlement.  Third, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

## III.   <u>DISCUSSION</u>

The Motion contends, *inter alia*, that the Court should (1) certify the proposed Putative Class and (2) grant preliminary approval of the Proposed Settlement.  Because the Proposed

Settlement fails to demonstrate the fairness and reasonableness of the proposed allocation for the Settlement Fund, the Court finds the Proposed Settlement deficient.  This deficiency causes the Court to disagree that provisional certification is proper at this time.

### A.    Conditional Class Certification

Plaintiff seeks conditional certification of a settlement class under Rule 23(a) and (b)(3) and satisfies all but one of Rule 23's certification requirements. (*See* Joint Mot. for Order 6:3–20, ECF No. 69).  To obtain class certification, a plaintiff must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b). *Amchem Prods.*, 521 U.S. at 614.  "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).  Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3).  The party seeking class certification bears the burden of affirmatively demonstrating that the class meets Rule 23's requirements. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2553 (2011).

In general, "[b]efore certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (citations omitted). However, when evaluating class certification in the context of a proposed settlement, courts "must pay undiluted, even heightened, attention to class certification requirements" because the court will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold. *Hanlon*, 150 F.3d at 1019; *see also Amchem Prods.*, 521 U.S. at 620.  The Court finds that Plaintiff has met the numerosity, commonality, and typicality

1  requirements under Rule 23(a) as well as the certification requirements under Rule 23(b).

2  However, because Plaintiff has not demonstrated that her counsel will adequately represent the

3  absent Putative Class members, the Court finds that preliminary certification is not proper.

### i.  *Rule 23(a)*

#### 1.  Numerosity

6  Rule 23(a)(1) requires that a class be so numerous that joinder of all members is

7  impracticable.  Generally, courts have held that numerosity is satisfied when the class size

8  exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654–56 (C.D. Cal.

9  2000); *In re Cooper Cos. Inc. Secs. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

10  In this case, the Putative Class consists of approximately 110 unit owners who

11  contracted with JetLiving for rental management of their units during the relevant period. (Joint

12  Mot. for Order 7:3–4).  Therefore, the Court can safely conclude that the Putative Class is

13  sufficiently numerous such that the joinder of each member would be impracticable.

#### 2.  Commonality

15  To demonstrate commonality, a plaintiff must show that there are "questions of law or

16  fact common to the class." Fed. R. Civ. P. 23(a)(2).  "A class has sufficient commonality 'if

17  there are questions of fact and law which are common to the class.'" *Hanlon*, 150 F.3d at 1019.

18  As clarified in *Dukes,* a plaintiff must demonstrate that the class members "have suffered the

19  same injury" and that their claims "depend upon a common contention . . . of such a nature that

20  it is capable of classwide resolution—which means that determination of its truth or falsity will

21  resolve an issue that is central to the validity of each one of the claims in one stroke." 131 S. Ct.

22  at 2551.

23  Here, the Complaint raises several common questions of law and fact, including (1)

24  whether JetLiving failed to disclose the resort fee to the Putative Class and (2) whether

25  JetLiving failed to treat the resort fee as gross rental revenue. (Compl. ¶¶ 52, 54, 55, ECF No.

1-1).  If Plaintiff continued to press this action, the answers to these questions would result in classwide resolution of the claims asserted.  Therefore, the Court finds that Plaintiff has satisfied the commonality requirement.

### 3.   Typicality

To demonstrate typicality, Plaintiff must show that her claims are typical of the class. Fed. R. Civ. P. 23(a)(3).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.*

In this case, like the Putative Class, Plaintiff contracted with JetLiving for rental management of her condominium units at The Signature and allegedly failed to receive her portion of a resort fees collected by JetLiving from rental guests. (Compl. ¶¶ 52, 54, 55, 63). Thus, the named Plaintiff's claims and the nature of her alleged losses are sufficiently similar to the Putative Class's claims and alleged losses to be considered typical.

### 4. Adequacy of Representation

"To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)).  In *Hanlon,* the Ninth Circuit identified two issues for determining the adequacy of representation: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Id.*

In the instant case, the Court is entirely satisfied that the named Plaintiff will adequately

represent the Putative Class.  However, as explained more fully below, the Court has concerns about the fairness and adequacy of the Proposed Settlement, which prohibit the Court from finding that Plaintiff's counsel ("Counsel") will adequately protect the interests of the Putative Class.  Specifically, the Court is concerned about the Proposed Settlement's allocation of attorneys' fees and costs.  These defects are cause for hesitation, and until they are cured, the Court is unable to conclude that Counsel will adequately represent the interests of the Putative Class.  Accordingly, the Court cannot find that Rule 23(a) is satisfied at this time.

### ii.   *Rule 23(b)*

Rule 23(b)(3) permits certification where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" in light of, among other things, "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

This case satisfies Rule 23(b)(3)'s requirements.  The common questions of whether Plaintiff and the Putative Class were entitled to a share of the resort fee and whether JetLiving had a duty to disclose that it was collecting resort fees predominate over any individual questions.  Moreover, adjudicating this matter as a class action is a superior approach to resolving the instant controversy because it avoids the dangers of duplicative litigation and the unfairness of inconsistent judgments.

### B.   Preliminary Approval of the Proposed Settlement

The Court next considers whether the terms of the Proposed Settlement are fair, reasonable, and adequate towards the absent Putative Class members. *See* Fed. R. Civ. P. 23(e)(2).  Courts have long recognized that "settlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026.  One inherent risk is that class counsel may collude with the defendants, "tacitly reducing the overall settlement in return for a

higher attorney's fee." *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002); *see Evans v. Jeff D.*, 475 U.S. 717, 733 (1986) (recognizing that "the possibility of a tradeoff between merits relief and attorneys' fees" is often implicit in class action settlement negotiations).

To guard against this potential for class action abuse, Rule 23(e) requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *see Staton*, 327 F.3d at 972 n. 22 (noting that the court's role is to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees"); *Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").

The factors in a court's fairness assessment will naturally vary from case to case, but courts in the Ninth Circuit generally must weigh the *Churchill* factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). However, where, as here, "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight *Churchill* factors alone is not enough." *Id.*

Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, "such agreements must

1   withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest

2   than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.*

3   (citing *Hanlon*, 150 F.3d at 1026); *accord In re Gen. Motors Corp. Pick–Up Truck Fuel Tank*

4   *Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995) (cautioning that courts must be "even more

5   scrupulous than usual in approving settlements where no class has yet been formally certified");

6   *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir.

7   1987) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the

8   settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (noting that

9   reviewing courts must employ "even more than the usual care"); *see also Manual for Complex*

10  *Litig.* § 21.612 (4th ed. 2004).  Therefore, before approving a precertification settlement, the

11  Court must not only show that it "has explored [the *Churchill*] factors comprehensively, but

12  also that the settlement is not the product of collusion among the negotiating parties." *In re*

13  *Bluetooth*, 654 F.3d at 947.

14       Because collusion is unlikely to be evident from the face of the settlement itself, "courts

15  must be particularly vigilant not only for explicit collusion, but also for more subtle signs that

16  class counsel have allowed pursuit of their own self-interests and that of certain class members

17  to infect the negotiations." *Id.*  A few such signs include: (1) "when counsel receive a

18  disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing'

19  arrangement providing for the payment of attorneys' fees separate and apart from class funds";

20  and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be

21  added to the class fund." *In re Bluetooth*, 654 F.3d at 947.

22       **i.    *Proposed Class Members' Share of the Settlement***

23       Under the Proposed Settlement, the amount to be paid to the entire Putative Class will

24  not exceed 48.4% of the total Settlement Amount, which itself represents roughly 19.4% of the

1    Putative Class's maximum estimated damages.[2] (*See* Joint Mot. for Order 3:24–4:4, 13:1–2).

2    The parties have failed to demonstrate that this allocation reflects a fair result for the Putative

3    Class.

4           Indeed, the parties propose using $119,000, or 47.6%, of the award for legal fees, costs,

5    and administrative expenses. (*See id.*).  This figure represents a fee award of 40% of the

6    $250,000 Settlement Amount.  Another $10,000 is allocated towards an incentive payment for

7    Plaintiff.  From here, simple arithmetic reveals that the parties have proposed an agreement

8    under which the absent Putative Class members will receive no more than 48.4% of the funds

9    offered in exchange for their claims.  This alone is cause for hesitation, and the parties have

10   made no effort to persuade the Court that it is a fair or reasonable result.  The Court will not

11   approve a precertification settlement without justification of the proposed allocation of

12   settlement funds.  Therefore, to obtain the Court's approval, the parties must justify these

13   allocations and thereby show that the proposed 48.4% left for the Putative Class represents a

14   fundamentally fair, adequate, and reasonable result.

15          **ii.**   ***Proposed Award of Attorneys' Fees***

16          The Court recognizes that it need not directly address a proposed allocation of attorneys'

17   fees until the settlement becomes final.  However, the parties must, to some degree, justify the

18   proposed award at this stage because any award of fees will directly reduce the amount payable

19   to the Putative Class, and thus bears on the present fairness inquiry. *Martinez v. Realogy Corp.*,

20   No. 3:10-cv-00755-RCJ-VPC, 2013 WL 5883618, at *6 (D. Nev. Oct. 30, 2013).

21          This is a common fund case. (Joint Mot. for Order 3:19).  Under regular common fund

22   procedure, the parties settle for the total amount of the common fund and shift the fund to the

23   court's supervision.  The plaintiffs' lawyers then apply to the court for a fee award from the

24   _____

25   [2] The parties agree that if Plaintiff's allegations are true, "then each unit owner would be entitled to . . .
$624,000." (Joint Mot. for Order 13:1–2).  However, "the parties negotiated a settlement of $250,000." (*Id.*
13:2–3).

fund. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) (noting that in a common fund case, "a court has control over the fund—even one created pursuant to a settlement, as here[—] . . . and assesses the litigation expenses against the entire fund so that the burden is spread proportionally among those who have benefited.").  In setting the amount of common fund fees, the district court has a special duty to protect the interests of the class. On this issue, the class's lawyers occupy a position adversarial to the interests of their clients. *Staton*, 327 F.3d at 970.  As the Ninth Circuit has explained,

> [b]ecause in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. *Rubber-stamp approval, even in the absence of objections, is improper.*

*Id.* (emphasis added); *see also In re Coordinated Pre–trial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 608 (9th Cir. 1997) ("In a common fund case, the judge must look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid. Their interests are not represented in the fee award proceedings by the lawyers seeking fees from the common fund.").

　　　　An award of attorney fees for creating a common fund may be calculated in one of two ways: (1) a percentage of the funds created; or (2) "the lodestar method, which calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Graulty*, 886 F.2d at 272.  The Ninth Circuit has approved either method for determining a reasonable award of fees. *Id.*  However, the fee award must always be reasonable under the circumstances. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994).

The typical range of acceptable attorney fees in the Ninth Circuit is 20% to 30% of the total settlement value, with 25% considered a benchmark percentage. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1047–50. In circumstances where a percentage recovery would be too small or too large in light of the hours worked or other relevant factors, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Here, Plaintiff has not provided a basis for concluding that the proposed fee award is reasonable. Instead, Counsel states that it "will seek to recover an amount not to exceed $100,000 . . . for attorney's fees." (Joint Mot. for Order 17:13–14, ECF No. 69). At this stage, the Court assumes that Counsel expects the full amount requested—$100,000, or 40% of the Settlement Amount. If that is the case, Counsel must make a strong showing under the *Vizcaino* factors, because an award of 40% is higher than the acceptable maximum of 30% and a full 19% higher than the Ninth Circuit's "bench mark." Alternatively, Counsel could rely on the lodestar method as a basis for the proposed fee. Again, however, Counsel would be required to show that the Proposed Settlement can support the multiplier necessary to yield a fee of $100,000. In either case, prior to a grant of precertification approval, Counsel must clearly articulate and justify its proposed award. Because Counsel makes no showing of entitlement to the fees requested under either the relevant factors or a lodestar calculation, the Court cannot find that the Proposed Settlement is fair and reasonable.

///

///

1

**IV.    CONCLUSION**

2

     **IT IS HEREBY ORDERED** that Plaintiff's Motion for Order (ECF No. 69) is

3

**DENIED**.

4

     **DATED** this __18__ day of April, 2016.

5

                               _____

6

                               Gloria M. Navarro, Chief Judge
                               United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25