**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ALICE SINANYAN, an individual; JAMES )
KOURY, an individual and trustee of the )
Koury Family Trust; and SEHAK TUNA, an )   **Case No.: 2:15-cv-00225-GMN-VCF**
individual, on behalf of themselves and others )
similarly situated, )   **ORDER**
)
               Plaintiffs, )
vs. )
)
LUXURY SUITES INTERNATIONAL, LLC, )
a Nevada limited liability company; RE/MAX )
PROPERTIES, LLC, a Nevada limited liability )
company; JETLIVING HOTELS, LLC, a )
Nevada limited liability company; and DOES 1 )
through 100, inclusive, )
)
               Defendants. )
)

      This action involves claims brought by Alice Sinanyan ("Plaintiff"), individually and on behalf of a putative class of approximately 110 condominium owners, against property rental manager JetLiving Hotels, LLC ("JetLiving").[1] Plaintiff alleges that JetLiving violated its contractual, statutory, and common law duties by failing to disclose its collection of a "resort fee" from rental guests, and the parties have now reached a settlement. Pending before the Court is the Renewed Motion for an Order (ECF No. 88) filed by both parties requesting that the Court grant provisional approval of the proposed settlement agreement and preliminarily certify Plaintiff's proposed class action for purposes of settlement. For the reasons stated

---

[1] There are also two other named plaintiffs—James Koury and Sehak Tuna—who are seeking to represent a class against Defendant Luxury Suites International, LLC ("LSI"). Plaintiff is also seeking to represent the class against LSI and Defendant Jab Affiliates, LLC ("Jab"). Reference to these plaintiffs and codefendants is omitted because the instant Motion only concerns allegations with respect to Plaintiff and JetLiving.

herein, the Motion is **DENIED**.

I.     BACKGROUND

On January 6, 2015, Plaintiff filed the instant action alleging various state law violations on behalf of a putative class comprising all condominium owners at the Signature at MGM Grand ("The Signature") who contracted with JetLiving to manage the rental of their condominium units after January 5, 2009 ("Putative Class"). (Compl. ¶ 60, ECF No. 1-1). Specifically, Plaintiff alleges that pursuant to the JetLiving Rental Agreement, members of the Putative Class were entitled to 65% of a "resort fee" collected by JetLiving from rental guests. (*Id.* ¶ 55). According to Plaintiff, not only did JetLiving retain all resort fees, JetLiving also failed to disclose that it was collecting the fee. (*Id.* ¶¶ 52, 54, 55). Based on these allegations, the Complaint alleges the following causes of action against JetLiving: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) intentional misrepresentation; (4) fraudulent concealment; (5) negligent misrepresentation; (6) violation of Nevada Revised Statutes § 41.600; (7) breach of fiduciary duty; and (8) unjust enrichment.

On January 14, 2016, the parties reached a tentative settlement through mediation and subsequently submitted a proposed settlement ("Proposed Settlement") now before the Court. (*See* Joint Mot. for Order 6:10–12, ECF No. 88). The total settlement amount is $250,000 ("Settlement Amount"), which the parties propose allocating in the following manner: (1) "attorney's fees not to exceed the amount of one hundred thousand dollars ($100,000.00)"; (2) "costs not to exceed ten thousand dollars ($10,000.00)"; (3) "an incentive payment in the amount of ten thousand dollars ($10,000.00) for plaintiff Alice Sinanyan"; (4) "administrative expenses in the amount of no greater than nine thousand dollars ($9,000.00)"; and (5) an allocation of the remaining $121,000 "on a *pro rata* basis based on the total resort fees collected by JetLiving from the rental of the individual Putative Class member's unit divided by the total resort fees collected by JetLiving from the rental of all non-opt out Putative Class

1 members' units." (*Id.* 6:26–7:3, 7:13–15).  The Proposed Settlement provides for notice by
2 direct mail to all Putative Class members identified through JetLiving's business records. (*Id.*
3 23:3–9).

4 On February 24, 2016, the parties filed their first Joint Motion for an Order. (*See* Joint
5 Mot. for Order, ECF No. 69).  The Motion requested that the Court adopt the parties' proposed
6 order (1) granting preliminary approval of the proposed class action Proposed Settlement; (2)
7 provisionally certifying the Putative Class; (3) approving the proposed method and form of
8 notice; and (4) scheduling a final approval hearing. (*See id.*).  On April 18, 2016, the Court
9 denied the parties' Motion because "Plaintiff [had] not provided a basis for concluding that the
10 proposed fee award [was] reasonable." (Order 12:11–12, ECF No. 83).  In light of the Court's
11 Order, the parties have filed this Renewed Joint Motion for an Order in which the parties repeat
12 their initial requests. (*See* Mot. for Order, ECF No. 88).

13 **II.    LEGAL STANDARD**

14 The Ninth Circuit has declared that a strong judicial policy favors settlement of class
15 actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  However, a
16 class action may not be settled without court approval. Fed. R. Civ. P. 23(e).  When the parties
17 to a putative class action reach a settlement agreement prior to class certification, "courts must
18 peruse the proposed compromise to ratify both the propriety of the certification and the fairness
19 of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  At the preliminary
20 stage, the court must first assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v.*
21 *Windsor*, 521 U.S. 591, 620 (1997)).

22 Second, the court must determine whether the proposed settlement "is fundamentally
23 fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).
24 Pre-class certification settlements "must withstand an even higher level of scrutiny for evidence
25 of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before

1  securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d
2  935, 946 (9th Cir. 2011).  This heightened scrutiny "ensure[s] that class representatives and
3  their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs
4  who class counsel had a duty to represent.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th
5  Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1027).  As such, courts must evaluate the settlement
6  for evidence of collusion. *Id.*

7  If the court preliminarily certifies the class and finds the proposed settlement fair to its
8  members, the court schedules a fairness hearing where it will make a final determination as to
9  the fairness of the class settlement.  Finally, the court must "direct notice in a reasonable
10 manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

11 **III.  DISCUSSION**

12 The Court has already analyzed this case under Rule 23's certification requirements, (*see*
13 Order, ECF No. 83), and it need not repeat that analysis here.  Instead, the success of the
14 pending motion depends on the second step of the preliminary certification analysis—whether
15 Plaintiff has demonstrated that the Proposed Settlement "is fundamentally fair, adequate, and
16 reasonable." *See Hanlon*, 150 F.3d at 1026.  On this point, the Court originally articulated two
17 defects in the Proposed Settlement. (*See* Order, ECF No. 83).  First, the Court found that "the
18 parties . . . failed to demonstrate [that the amount to be paid to the entire Putative Class,
19 roughly 19.4% of the Putative Class's maximum estimated damages] reflects a fair result." (*Id.*
20 9:23–10:3).  The Court's hesitation on this point was rooted in its second concern that "Plaintiff
21 [had] not provided a basis for concluding that the proposed [attorneys'] fee award is
22 reasonable." (*Id.* 12:11–12).

23 The instant Motion attempts to provide that basis under the two methods approved by
24 the Ninth Circuit for calculating a reasonable attorneys' fee award—the percentage method and
25 the lodestar method. *See Bluetooth*, 654 F.3d at 941.  However, because Plaintiff has failed to

justify why Plaintiff's counsel ("Counsel") is entitled to 40% of the Settlement Amount under either method, the Court denies Plaintiff's Renewed Motion. *Id.* ("While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount.").

### A.     Percentage Method

Under the percentage method, "the court simply awards the attorneys a percentage of the fund." *Staton*, 327 F.3d at 968.  As the Court noted in its prior Order, "[t]he typical range of acceptable attorney fees in the Ninth Circuit is 20% to 30% of the total settlement value, with 25% considered a benchmark percentage." (Order 12:1–10, ECF No. 83) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)).  The percentage may then be adjusted upward or downward to "account for any unusual circumstances" involved in the case. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (noting that percentage awards ordinarily range from as little as 20% to as much as 30%).  However, a fee award of one-third represents the outer bounds of an appropriate award in common fund cases. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449–50 (E.D. Cal. 2013) (collecting cases).

When departing from the "benchmark," courts must provide "adequate explanation in the record of any 'special circumstances' justifying a departure." *Bluetooth*, 654 F.3d at 942 (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  Special circumstances include protracted litigation, complex or novel issues, and non-English speaking clients. *See e.g.*, *Lee v. Enter. Leasing Co.-W.*, No. 3:10-cv-00326-LRH, 2015 WL 2345540, at *9 (D. Nev. May 15, 2015) ("Fees larger than the benchmark may be appropriate when class counsel achieves an excellent result after representing the class for a long period of time."); *Barbosa*, 297 F.R.D. at 449–50 (awarding 33% fees where most class

members spoke Spanish only and the case required "specialist skills"); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding 33% where class counsel settled for 36% of the full possible relief even though "Plaintiffs faced a significant risk by raising an issue . . . not yet addressed by the Ninth Circuit").

Plaintiff requests a fee award in excess of the benchmark and therefore must establish that special circumstances exist to justify such an award.[2] However, Plaintiff has failed to demonstrate "special circumstances" not typically present in other common fund cases that justify an award in excess of the benchmark.[3] On this point, Plaintiff argues that the fee request is warranted given the risk to Counsel in taking the case "despite the fact that other courts in the Ninth Circuit have dismissed class actions brought based upon the charging of resort fees." (Renewed Mot. 21:13–18). However, the two cases Plaintiff in support of this argument are inapposite. In both cases, the plaintiffs—guests at the defendant hotels—raised various state law claims against the hotels for "allegedly misleading and deceptive resort fees and unlawful levy of the[] fees." *Harris v. Las Vegas Sands L.L.C.*, No. cv 12-10858 DMG FFMX, 2013 WL 5291142, at *2 (C.D. Cal. Aug. 16, 2013); *see also Wilson v. Stratosphere Corp.*, 371 F. App'x 810, 811 (9th Cir. 2010). In contrast, the plaintiff in this case is a condominium owner alleging, *inter alia*, that the defendant management company breached its contract with Plaintiff "by failing and refusing to pay Plaintiff Sinanyan and Jet Class members 65 percent of

---

[2] Additionally, Plaintiff has not cited to any cases finding that a fee award of 40% is reasonable, and the Court is unable to find any cases awarding over 34%. *See Barbosa*, 297 F.R.D. at 449–50; *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *11–*16 (C.D. Cal. July 21, 2008) (declining fee request of 39.43% because counsel failed to show special circumstances "to justify increasing the benchmark by some 58%").

[3] Plaintiff further points out that although the "proposed request may be on the high end of the range identified by the Ninth Circuit, the request is precisely in line with the percentage agreed to in this matter by the class representative." (Renewed Mot. 21:9–11, ECF No. 88). Nevertheless, the Court must fulfill its "duty to assess fully the reasonableness of the fee request." *See Bluetooth*, 654 F.3d at 943–44.

1 *all* collected rental revenue." (Am. Compl. ¶ 103, ECF No. 103). Further, as in any case 2 undertaken on a contingency fee basis, Counsel undertook an outlay of time and resources with 3 no guarantee of receiving any fees. As a result, Plaintiff has not shown unusual circumstances 4 justifying an upward deviation from the 25% common fund benchmark.

5       **B.**      **Lodestar Method**

6       To determine the amount of a reasonable attorneys' fees using the lodestar method, 7 district courts typically proceed in two steps. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 8 1202 (9th Cir. 2013). In the first step, the court multiplies the number of hours reasonably 9 expended by a reasonable hourly rate. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th 10 Cir. 2015). The product of this computation is sometimes referred to as the "lodestar figure" 11 and in most cases it is a "presumptively reasonable" fee. *Gonzalez*, 729 F.3d at 1202 (citing 12 *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006)). In the second step, the district 13 court may adjust the lodestar upward or downward based on a variety of factors. *Id.* (quoting 14 *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)).

15       A reasonable hourly rate should reflect the prevailing market rates of attorneys 16 practicing in the relevant community. *Id.*; *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 17 973, 980 (9th Cir. 2008). The relevant "community" is the district in which the court sits. *See* 18 *Camacho*, 523 F.3d at 979. In calculating a reasonable fee award, a district court has discretion 19 to reduce an attorney's rate to ensure that it is "in line with those prevailing in the community 20 for similar services by lawyers of reasonably comparable skill, experience and reputation." 21 *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110 (9th Cir. 2014). Rate determinations in other 22 cases in the District of Nevada have found hourly rates as much as $450 for a partner and $250 23 for an experienced associate to be the prevailing market rate in this district. [4] A rate of $400 per

24 ―――――――――――――

25 [4] *See, e.g.*, *Gonzalez-Rodriguez v. Mariana's Enterps.*, 2016 WL 3869870 at *9 (D. Nev. July 14, 2016) ("[H]ourly rates of $450 and $650 per hour are well over the range of hourly rates approved in this district."); *Marrocco v. Hill*, 291 F.R.D. 586 (D. Nev. 2013) (finding reasonable hourly rate in community of Nevada to be

hour has been described as "at the top of the market," but has been found reasonable in complex matters. *Marrocco v. Hill*, 291 F.R.D. 586, 589 (D. Nev. 2013).

The party seeking an award of fees must submit evidence supporting the rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015) (requiring proof of market rates in the relevant community). The movant "'has an initial burden of production,' to produce 'satisfactory evidence' that the fee requested is reasonable." *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224–25 (9th Cir. 2016) (quoting *$28,000 in U.S. Currency*, 802 F.3d at 1105). The movant's "initial duty of production is not excused by lack of opposition." *Id.* at 1225. Once a movant discharges its initial burden of production, the court will make a factual determination as to whether the requested fee is reasonable. *$28,000.00 in U.S. Currency*, 802 F.3d at 1105 (citing *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582–83 (9th Cir. 2010).

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Beauchamp*, 816 F.3d at 1224 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). However, declarations of the fee applicant do not conclusively establish the prevailing market rate. *Camacho*, 523 F.3d at 980. In addition to evidence supporting the rates claimed, the party seeking an award of fees must submit evidence supporting the hours worked.

---

$375–$400 for partner with over thirty-five years of experience); *Agarwal v. Oregon Mut. Ins. Co.*, No. 2:11-cv-01384-LDG, 2013 WL 5882710, at *2 (D. Nev. Oct. 30, 2013) (finding $300 per partner hour and $260 per associate hour reasonable); *Stephens Media LLC v. Citihealth, LLC*, No. 2:09-cv-02285-MMD, 2013 WL 4045926, at *2 (D. Nev. Aug. 7, 2013) (finding rates between $400 and $185 to be reasonable); *In re USA Commercial Mortgage Co.*, No. 2:07-cv-892-RCJ-GWF, 2013 WL 3944184, at *20 (D. Nev. July 30, 2013) (finding rates between $170 and $420 to be reasonable and $275 to $775 to be unreasonable); *Cervantes v. Emerald Cascade Rest. Sys., Inc.*, No. 3:11-cv-00242-VPC, 2013 WL 3878692, at *2 (D. Nev. July 25, 2013) (finding $450 to be excessive and reducing it to $275).

1  *Hensley*, 461 U.S. at 433; *see also $28,000.00 in U.S. Currency*, 802 F.3d at 1105 (noting that
2  the evidence must include "detailed documentation of the hours worked").  Where the
3  documentation of hours is inadequate, the district court may reduce the award accordingly.
4  *Hensley*, 461 U.S. at 433.

5       In this case, Plaintiff's declaration supporting the fee request states that the hourly rates
6  for the attorneys who worked on this case are as follows: $550 for Don Springmeyer; $425 for
7  Justin Jones; $340 for Royi Moas; $340 for Jordan Butler; and $300 for Dan Hill. (Decl. of Don
8  Springmeyer ¶ 17, ECF No. 89).  Although billing records are not attached to the declaration,
9  Counsel estimates that they worked "approximately 243 hours" prosecuting this case against
10 JetLiving, "or $89,360.66 in attorney's fees lodestar." (*Id.* ¶ 19).  Counsel asserts that the
11 requested fee award is reasonable because of "the substantial amount of work that Plaintiffs'
12 counsel has performed" including written discovery, compliance with initial disclosure
13 obligations, and third party depositions. (Renewed Mot. 22:13–20).

14      Documentation of Counsel's hourly rate and hours expended is insufficient allow a
15 lodestar cross-check.  First, the declaration fails to indicate whether the attorneys listed are
16 partners or associates.  Consequently, the Court is unable to determine whether their rates are
17 consistent with this district's prevailing market rates.  Second, Counsel did not include any
18 billing records. *See $28,000.00 in U.S. Currency*, 802 F.3d at 1105 (noting that the evidence
19 must include "detailed documentation of the hours worked").  Finally, although the declaration
20 claims that "[t]he billing rates applied are reasonable and customary for attorneys engaged in
21 complex class action litigation in federal court," such cursory averments by the requesting
22 attorney fall short of demonstrating that Counsel's rates are consistent with the prevailing
23 market rate. *See Camacho*, 523 F.3d at 980 ("[T]he burden is on the fee applicant to produce
24 satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are
25 in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation.") (emphasis added).  The Court is therefore unable to conduct a lodestar analysis of Plaintiff's fee request at this time.

Because neither the percentage method nor the lodestar method supports a 40% fee award to Counsel, the Court must again deny the parties' Motion for an Order approving the Proposed Settlement.  Plaintiff has indicated that "Plaintiffs' counsel will consider reducing its request for fees to 33 percent of the common fund." (Renewed Mot. 21:21 n.5).  In the event Counsel does so, the Court cautions Counsel that any request for fees above 25% must clearly identify the special circumstances that justify such an award. *Bluetooth*, 654 F.3d at 942 (requiring courts to provide "adequate explanation in the record of any 'special circumstances' justifying a departure" from the benchmark).

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that the parties' Renewed Motion for an Order, (ECF No. 88), is **DENIED**.

**DATED** this __17__ day of August, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge