**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ALICE SINANYAN, an individual; JAMES KOURY, an individual and trustee of the Koury Family Trust; and SEHAK TUNA, an individual, on behalf of themselves and others similarly situated,<br><br>　　　　　　Plaintiffs,<br>　vs.<br><br>LUXURY SUITES INTERNATIONAL, LLC, a Nevada limited liability company; RE/MAX PROPERTIES, LLC, a Nevada limited liability company; JETLIVING HOTELS, LLC, a Nevada limited liability company; and DOES 1 through 100, inclusive,<br><br>　　　　　　Defendants. | Case No.: 2:15-cv-00225-GMN-VCF<br><br>**ORDER** |

This action involves claims brought by Alice Sinanyan ("Sinayan") and Jim Koury ("Koury") (collectively "Plaintiffs"), individually and on behalf of a putative class of approximately 347 condominium owners, against property rental manager Luxury Suites International, LLC ("LSI") and its predecessor Re/Max Properties, LLC ("Re/Max").[1] Plaintiffs allege that LSI violated its contractual, statutory, and common law duties by failing to disclose its collection of a "resort fee" from rental guests, and the parties have now reached a settlement. Pending before the Court is the Joint Motion for an Order, (ECF No. 114), filed by both parties requesting that the Court grant provisional approval of the proposed settlement agreement and preliminarily certify Plaintiffs' proposed class action for purposes of settlement.

---

[1] Plaintiffs are variously seeking to represent the class against Defendants Jab Affiliates, LLC ("Jab") and JetLiving Hotels, LLC. Reference to these codefendants is omitted because the instant Motion only concerns allegations with respect to Plaintiffs and LSI.

1  For the reasons stated herein, the Motion is **GRANTED**.

2  **I.     <u>BACKGROUND</u>**

3  On February 9, 2015, Plaintiffs filed the instant action alleging various state law violations on behalf of a putative class comprising all condominium owners at the Signature at MGM Grand ("The Signature") who contracted with LSI to manage the rental of their condominium units from January 5, 2009, to January 5, 2015 ("Putative Class"). (First Am. Compl. ¶ 75, ECF No. 32). Specifically, Plaintiffs alleges that pursuant to the LSI Rental Agreement, members of the Putative Class were entitled to 65% of a "resort fee" collected by LSI from rental guests. (*Id.* ¶ 88). According to Plaintiffs, not only did LSI retain all resort fees, LSI also failed to disclose that it was collecting the fee. (*Id.* ¶ 89). Based on these allegations, the Complaint alleges the following causes of action against LSI: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) intentional misrepresentation; (4) fraudulent concealment; (5) negligent misrepresentation; (6) violation of Nevada Revised Statutes § 41.600; (7) breach of fiduciary duty; and (8) unjust enrichment.

On August 22, 2016, the parties reached a tentative settlement through mediation and subsequently submitted a proposed settlement ("Proposed Settlement") now before the Court. (*See* Joint Mot. for Order 4:15–18, ECF No. 114). The total settlement amount is $525,000.00 ("Settlement Amount"), which the parties propose allocating in the following manner: (1) "attorney's fees in the amount of twenty five percent (25%) of the total settlement amounts"; (2) "costs not to exceed Eighty-Eight Thousand Dollars and Zero Cents ($88,000.00)"; (3) "an incentive payment in the amount of Twenty Thousand Dollars and Zero Cents ($20,000.00) to be paid to Individual Plaintiff Sinanyan and Ten Thousand Dollars and Zero Cents ($10,000.00) to be paid to Individual Plaintiff Koury"; (4) "administrative expenses in the amount of Twelve Thousand Dollars and No Cents ($12,000.00), but not to exceed Fifteen Thousand Dollars and No Cents ($15,000.00)"; and (5) an allocation of the remaining proceeds

1  "on a *pro rata* basis based on the Resort Fees Collected by LSI from the rental of the individual
2  Putative Class member's unit divided by the total Resorts Fees Collected by LSI from the rental
3  of all non-opt out Putative Class members' units." (*Id.* 6:22–7:9).  The Proposed Settlement
4  provides for notice by direct mail to all Putative Class members identified through LSI's
5  business records. (*Id.* 7:10–15).

6  The instant Motion requests that the Court adopt the parties' proposed order by: (1)
7  granting preliminary approval of the proposed class action Proposed Settlement; (2)
8  provisionally certifying the Putative Class; (3) approving the proposed method and form of
9  notice; and (4) scheduling a final approval hearing. (*Id.* 4:20–22).

10 **II.    LEGAL STANDARD**

11 The Ninth Circuit has declared that a strong judicial policy favors settlement of class
12 actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  However, a
13 class action may not be settled without court approval. Fed. R. Civ. P. 23(e).  When the parties
14 to a putative class action reach a settlement agreement prior to class certification, "courts must
15 peruse the proposed compromise to ratify both the propriety of the certification and the fairness
16 of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  At the preliminary
17 stage, the court must first assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v.*
18 *Windsor*, 521 U.S. 591, 620 (1997)).

19 Second, the court must determine whether the proposed settlement "is fundamentally
20 fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).
21 Pre-class certification settlements "must withstand an even higher level of scrutiny for evidence
22 of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before
23 securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d
24 935, 946 (9th Cir. 2011).  This heightened scrutiny "ensure[s] that class representatives and
25 their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs

1  who class counsel had a duty to represent.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th
2  Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1027).  As such, courts must evaluate the settlement
3  for evidence of collusion. *Id.*

4  If the court preliminarily certifies the class and finds the proposed settlement fair to its
5  members, the court schedules a fairness hearing where it will make a final determination as to
6  the fairness of the class settlement.  Finally, the court must "direct notice in a reasonable
7  manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

## III. DISCUSSION

The Motion contends, *inter alia*, that the Court should (1) certify the proposed Putative Class and (2) grant preliminary approval of the Proposed Settlement.

### A. Conditional Class Certification

Plaintiff seeks conditional certification of a settlement class under Rule 23(a) and (b)(3) and satisfies all of Rule 23's certification requirements. (*See* Joint Mot. for Order 6:3–20, ECF No. 69).  To obtain class certification, a plaintiff must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b). *Amchem Prods.*, 521 U.S. at 614.  "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3).  The party seeking class certification bears the burden of affirmatively demonstrating that the class meets Rule 23's requirements. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2553 (2011).

In general, "[b]efore certifying a class, the trial court must conduct a 'rigorous analysis'

to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). However, when evaluating class certification in the context of a proposed settlement, courts "must pay undiluted, even heightened, attention to class certification requirements" because the court will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings. *Hanlon*, 150 F.3d at 1019; *see also Amchem Prods.*, 521 U.S. at 620. The Court finds that Plaintiffs have has met the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a) as well as the certification requirements under Rule 23(b).

      i.    *Rule 23(a)*

          **1.    Numerosity**

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Generally, courts have held that numerosity is satisfied when the class size exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654–56 (C.D. Cal. 2000); *In re Cooper Cos. Inc. Secs. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

In this case, the Putative Class consists of approximately 347 unit owners who contracted with LSI for rental management of their units during the relevant period. (Joint Mot. for Order 7:3–4). Therefore, the Court can safely conclude that the Putative Class is sufficiently numerous such that the joinder of each member would be impracticable.

          **2.    Commonality**

To demonstrate commonality, a plaintiff must show that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A class has sufficient commonality 'if there are questions of fact and law which are common to the class.'" *Hanlon*, 150 F.3d at 1019. As clarified in *Dukes,* a plaintiff must demonstrate that the class members "have suffered the same injury" and that their claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

Here, the Amended Complaint raises several common questions of law and fact, including (1) whether LSI failed to disclose the resort fee to the Putative Class and (2) whether LSI failed to treat the resort fee as gross rental revenue. (First Am. Compl. ¶ 79, ECF No. 32). If Plaintiffs continued to press this action, the answers to these questions would result in classwide resolution of the claims asserted. Therefore, the Court finds that Plaintiffs have satisfied the commonality requirement.

### 3. Typicality

To demonstrate typicality, Plaintiffs must show that their claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.*

In this case, like the Putative Class, Plaintiffs contracted with LSI for rental management of their condominium units at The Signature and allegedly failed to receive their portion of resort fees collected by LSI from rental guests. (First Am. Compl. ¶ 80). Thus, the named Plaintiffs' claims and the nature of their alleged losses are sufficiently similar to the Putative Class's claims and alleged losses to be considered typical.

### 4. Adequacy of Representation

"To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). In *Hanlon,* the Ninth Circuit

identified two issues for determining the adequacy of representation: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Id.*

In the instant case, Plaintiffs seek appointment of Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, ("Counsel") as class counsel. (Mot. 6:27–28). There is nothing in the record suggesting that Plaintiffs or Counsel have any conflict of interest with other absent class members. Plaintiffs' claims thus appear "completely aligned with [that] of the class," and there is no conflict apparent at this stage. *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 301 (E.D. Cal. 2011). Plaintiffs' attorneys are experienced class action litigators, as reflected in declarations submitted with Plaintiffs' Motion for preliminary class certification. (*See* Springmeyer Decl., ECF No. 115). The Court is therefore satisfied at this stage that the named Plaintiffs will adequately represent the Putative Class. However, as discussed below, Plaintiffs must provide sufficient justification for their disproportionally large incentive awards or reduce the awards. *See Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (noting that unreasonably high incentive awards can destroy adequacy of class representatives).

### ii.   *Rule 23(b)*

Rule 23(b)(3) permits certification where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" in light of, among other things, "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

This case satisfies Rule 23(b)(3)'s requirements. The common questions of whether Plaintiffs and the Putative Class were entitled to a share of the resort fee and whether LSI had a duty to disclose that it was collecting resort fees predominate over any individual questions.

Moreover, adjudicating this matter as a class action is a superior approach to resolving the instant controversy because it avoids the dangers of duplicative litigation and the unfairness of inconsistent judgments.

### B. Preliminary Approval of the Proposed Settlement

The Court next considers whether the terms of the Proposed Settlement are fair, reasonable, and adequate towards the absent Putative Class members. *See* Fed. R. Civ. P. 23(e)(2). Courts have long recognized that "settlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026. One inherent risk is that class counsel may collude with the defendants, "tacitly reducing the overall settlement in return for a higher attorney's fee." *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002); *see also Evans v. Jeff D.*, 475 U.S. 717, 733 (1986) (recognizing that "the possibility of a tradeoff between merits relief and attorneys' fees" is often implicit in class action settlement negotiations).

To guard against this potential for class action abuse, Rule 23(e) requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *see Staton*, 327 F.3d at 972 n. 22 (noting that the court's role is to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees"); *Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").

The factors in a court's fairness assessment will naturally vary from case to case, but courts in the Ninth Circuit generally must weigh the *Churchill* factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the

>    stage of the proceedings; (6) the experience and views of counsel;
>    (7) the presence of a governmental participant; and (8) the reaction
>    of the class members of the proposed settlement.

*In re Bluetooth*, 654 F.3d at 946 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  However, where, as here, "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight *Churchill* factors alone is not enough." *Id.*

Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement.  Accordingly, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* (citing *Hanlon*, 150 F.3d at 1026); *accord In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995) (cautioning that courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified"); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (noting that reviewing courts must employ "even more than the usual care"); *see also Manual for Complex Litig.* § 21.612 (4th ed. 2004).  Therefore, before approving a precertification settlement, the Court must not only show that it "has explored [the *Churchill*] factors comprehensively, but also that the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth*, 654 F.3d at 947.

Because collusion is unlikely to be evident from the face of the settlement itself, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.*  A few such signs include: (1) "when counsel receive a

disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.*

### i. *Proposed Class Members' Share of the Settlement*

Under the Proposed Settlement, the amount to be paid to the entire Putative Class will not exceed 50% of the total Settlement Amount, which itself represents roughly 10% of the Putative Class's maximum estimated damages.[2] (*See* Joint Mot. for Order 17:24–25). This proposed distribution of funds gives the Court some pause. However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000). Indeed, Plaintiffs contend that "putative class members could potentially owe LSI for amounts undercharged by LSI." (Joint Mot. for Order 17:27–28).

The Court finds, based on the information provided by Plaintiffs, that the settlement award in this case appears to be fair and reasonable. However, Counsel is advised that more information will be required at the final approval stage in order for the Court to ascertain whether the settlement amount is in fact reasonable in light of the risks implicated by further litigation. *Pointer v. Bank of Am. Nat'l Ass'n*, No. 2:14-cv-00525-KJM-CKD, 2016 WL 696582, at *12 (E.D. Cal. Feb. 22, 2016) ("It has been remarked that the district court takes on the role of fiduciary for absent class members, or that of a skeptical client, who critically examines the settlement's terms and implementation.").

---

[2] Plaintiffs contend that assuming their allegations are true, "then putative class members would be entitled to sixty-five percent (65%) of $4.1 million, or $2,665,000.00." (Joint Mot. for Order 17:24–25).

### ii.  *Proposed Award of Attorneys' Fees*

The Court recognizes that it need not directly address a proposed allocation of attorneys' fees until the Proposed Settlement becomes final.  However, the parties must, to some degree, justify the proposed award at this stage because any award of fees will directly reduce the amount payable to the Putative Class, and thus bears on the present fairness inquiry. *Martinez v. Realogy Corp.*, No. 3:10-cv-00755-RCJ-VPC, 2013 WL 5883618, at *6 (D. Nev. Oct. 30, 2013).

This is a common fund case. (Joint Mot. for Order 3:19).  Under regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision.  The plaintiffs' lawyers then apply to the court for a fee award from the fund. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) (noting that in a common fund case, "a court has control over the fund—even one created pursuant to a settlement, as here[—] . . . and assesses the litigation expenses against the entire fund so that the burden is spread proportionally among those who have benefited.").  In setting the amount of common fund fees, the district court has a special duty to protect the interests of the class.  On this issue, the class's lawyers occupy a position adversarial to the interests of their clients. *Staton*, 327 F.3d at 970.  As the Ninth Circuit has explained,

> [b]ecause in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. *Rubber-stamp approval, even in the absence of objections, is improper.*

*Id.* (emphasis added); *see also In re Coordinated Pre-trial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 608 (9th Cir. 1997) ("In a common fund case, the judge must look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial

benefit after the lawyers are paid. Their interests are not represented in the fee award proceedings by the lawyers seeking fees from the common fund.").

An award of attorney fees for creating a common fund may be calculated in one of two ways: (1) a percentage of the funds created; or (2) "the lodestar method, which calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Graulty*, 886 F.2d at 272. The Ninth Circuit has approved either method for determining a reasonable award of fees. *Id.* However, the fee award must always be reasonable under the circumstances. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994).

The typical range of acceptable attorney fees in the Ninth Circuit is 20% to 30% of the total settlement value, with 25% considered a benchmark percentage. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1047–50. In circumstances where a percentage recovery would be too small or too large in light of the hours worked or other relevant factors, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Here, "Plaintiffs seek an award of attorney's fees in the amount of $131,250.00, or 25 percent of the common fund." (Joint Mot. for Order, 21:11–12). Counsel's proposed award aligns with the Ninth Circuit's "benchmark" of twenty-five percent, and the Court therefore need not conduct a cross check with the loadstar amount. *See Powers*, 229 F.3d at 1256–57 ("[T]wenty-five percent of the recovery [is] a 'benchmark' for attorneys' fees calculations

under the percentage-of-recovery approach."). Finding the percentage requested by Plaintiffs not unreasonable, the Court approves the attorneys' fee request on a preliminary basis. *See Vizcaino*, 290 F.3d at 1047 (observing that percentage awards of between twenty and thirty percent are common).

### iii. *Treatment of Class Representatives*

The Proposed Settlement provides for class representative payments of $20,000.00 to Sinanyan and $10,000 to Koury. (Doc. No. 29-1 at 22.)

At its discretion, a district court may award incentive payments to named plaintiffs in class action cases. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). The purpose of incentive awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. To justify an incentive award, a class representative must present "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008).

The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe*, 715 F.3d at 1165. In particular, district courts have declined to approve incentive awards that represent an unreasonably high proportion of the overall settlement amount, or that are disproportionate relative to the recovery of other class members. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 365 (E.D. Cal. 2014); *see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the incentive award to $5,000); *Wolph v. Acer Am. Corp.*, No. C 09–01314 JSW, 2013 WL 5718440, at *6

(N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where class representatives did not demonstrate great risk to finances or reputation in bringing the class action). Courts have reasoned that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, thus jeopardizing adequacy of class representatives. *See Staton*, 327 F.3d at 977–78; *Radcliffe*, 715 F.3d at 1165 (noting that unreasonably high incentive awards can destroy adequacy of class representatives).

Here, the proposed Settlement Agreement provides an incentive award of $20,000.00 to class representative Sinanyan, an amount that represents approximately 3.8% of the gross settlement fund. (Joint Mot. for Order 7:4–7). The Settlement Agreement also provides an incentive award of $10,000.00 to class representative Koury, or approximately 1.9% of the gross settlement fund. (*Id.*). The lowest average settlement share per class member is $751, based on a $260,750 settlement amount and the class size of 347 unit owners. Plaintiffs do not explain why their efforts during the litigation process merit awards significantly higher than the average settlement share per class members. Moreover, the proposed incentive awards also greatly exceed a $5,000 award that courts in this circuit have recognized as "presumptively reasonable." *See, e.g.*, *Deatrick v. Securitas Sec. Servs. USA, Inc.*, No. 13-CV-05016-JST, 2016 WL 5394016, at *8 (N.D. Cal. Sept. 27, 2016).

During the final fairness review, the Court will determine whether the requested incentive award is appropriate in light of "the proportion of the payments relative to the settlement amount," "the size of the payment," "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and "the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 952; *see also Deatrick*, 2016 WL 5394016, at *8 (finding that while $5,000 was a presumptively reasonable incentive award in the Ninth Circuit, such an award in that case was

1  not warranted because plaintiff did not offer details regarding the actions the plaintiff had taken
2  to protect the interests of the class).  Without satisfactory elaboration on these points, the Court
3  will reduce Plaintiffs' incentive awards following the final fairness hearing to a reasonable
4  amount. *See, e.g.*, *Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 WL 5718440, at *6
5  (N.D. Cal. Oct. 21, 2013).

###   iv.   *Proposed Class Notice and Administration*

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal. Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004).

The Court finds that the notice and exclusion form proposed by Plaintiffs meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and that the proposed mail delivery is also appropriate in these circumstances. (*See* Joint Mot. for Order 7:10–15). Specifically, Plaintiffs' proposed notice adequately describes the terms of the settlement, informs the class of the proposed award, provides information concerning the time, place, and date of the final approval hearing, and informs absent class members that they may enter an appearance through counsel. (*See* Exs. B, C to Springmeyer Decl., ECF Nos. 115-2, 115-3); *Churchill*, 561 F.3d at 575 (noting that a class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

/ / /

/ / /

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the parties' Motion for an Order, (ECF No. 114), is **GRANTED** as follows:

1. Preliminary class certification is approved;
2. Plaintiffs' Counsel are appointed as Class Counsel;
3. Sinanyan and Koury are appointed as Class Representatives;
4. CPT Group, Inc., is approved as Claims Administrator;
5. The Settlement Agreement is approved on a preliminary basis as fair and adequate;
6. Within thirty days from the date this Order is filed, Defendant shall provide the Claims Administrator with the name, last known home address, home telephone number, and email address pertaining to each class member;
7. Within thirty days after receipt by the Claims Administrator of the putative class members' identifying information, the Claims Administrator shall mail the Class Notice, (Ex. B to Springmeyer Decl., ECF No. 115-2), and Exclusion Form, (ECF No. C to Springmeyer Decl., ECF No. 115-3), (collectively, the "Class Notice Package") by United States First Class Mail;
8. The deadline for class members to mail an Exclusion Form and/or mail any objection(s) to the Settlement Agreement is sixty days from the date the Claims Administrator mails the Class Notice Package;
9. The deadline for Class Counsel to file a motion for attorneys' fees, costs, and incentive awards to the Class Representatives is November 20, 2017;
10. The deadline for Plaintiffs to file a motion for final approval of class action settlement, as well as the Claims Administrator to file a declaration of due diligence and proof of mailing, is December 18, 2017;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

11. A final fairness hearing shall take place on January 19, 2018, at 9:00 am in Courtroom 7C before Chief Judge Gloria Navarro.  The matter of Class Counsel's motion for attorneys' fees, costs, and incentive awards to the Class Representatives will be considered at the final fairness hearing.

**DATED** this __20__ day of July, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge